IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

**ESTELE RAY NEELY**, *Individually and on behalf of himself and others similarly situated*,

Plaintiff,

v.　　　　　　　　　　　　　　　No. _____

**U.S. XPRESS ENTERPRISES, INC.,**　　**FLSA Opt-in Collective Action**
*a Nevada Corporation,*　　　　　　　　**Rule 23 Class Action**
**U.S. XPRESS, INC.,**
*a Nevada Corporation, and*　　　　　　**JURY DEMANDED**
**U.S. XPRESS LEASING, INC.,**
*a Tennessee Corporation,*

Defendants.

## ORIGINAL COLLECTIVE AND CLASS ACTION COMPLAINT

Named Plaintiff Estele Ray Neely ("Named Plaintiff"), individually and on behalf of himself and those similarly situated, hereby complains as follows against Defendants U.S. Xpress Enterprises, Inc., U.S. Xpress, Inc., and U.S. Xpress Leasing, Inc. ("Defendants").

### INTRODUCTION

1. Named Plaintiff initiated the instant action to redress Defendants' violations of the Fair Labor Standards Act ("FLSA"). Named Plaintiff asserts that Defendants erroneously designated Named Plaintiff and those similarly situated as independent contractors and unlawfully deducted from and withheld portions of the wages owed to them. Specifically, Defendants required Named Plaintiff and those similarly situated to cover the costs of the truck, insurance, and fuel by intentionally reducing the wages of Named Plaintiff and those

1

similarly situated below the federal minimum wage.

2. Named Plaintiff initiated this action to redress Defendants' violations of the common law of Tennessee for unjust enrichment and breach of contract, on behalf of himself and all those similarly situated.

## JURISDICTION AND VENUE

3. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

4. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States, the FLSA, 29 U.S.C. § 201 *et seq.* This Court has supplemental jurisdiction over Named Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to claims in this action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. This Court also has jurisdiction over Named Plaintiff's state law claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million and at least one member of the putative class is domiciled in a state different from the domicile of any Defendant.

6. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this jurisdictional district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

7. Venue is proper in this judicial district pursuant to 29 U.S.C. § § 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred

in this judicial district.

## **PARTIES**

8. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

9. Named Plaintiff Estele Ray Neely was employed by Defendants as an hourly-paid over the road truck driver within this district at all times material to this collective action. Mr. Neely's Consent to Join form is attached as *Exhibit A*.

10. Defendant U.S. Xpress Enterprises, Inc. is a Nevada Corporation authorized to do business, and is currently doing business, in the State of Tennessee with its principal place of business being located at 4080 Jenkins Road; Chattanooga, Tennessee 37421-1174. According to the Tennessee Secretary of State, it may be served via its registered agent: Corporation Service Company, 2908 Poston Ave.; Nashville, Tennessee 37203-1312.

11. Defendant U.S. Xpress, Inc. is a Nevada Corporation authorized to do business, and is currently doing business, in the State of Tennessee with its principal place of business being located at 4080 Jenkins Road; Chattanooga, Tennessee 37421-1174. According to the Tennessee Secretary of State, it may be served via its registered agent: Corporation Service Company, 2908 Poston Ave.; Nashville, Tennessee 37203-1312.

12. Defendant U.S. Xpress Leasing, Inc. is a Tennessee Corporation authorized to do business, and is currently doing business, in the State of Tennessee with its principal place of business being located at 4080 Jenkins Road; Chattanooga, Tennessee 37421-1174. According to the Tennessee Secretary of State, it may be served via its registered agent: Corporation Service Company, 2908 Poston Ave.; Nashville, Tennessee 37203-1312.

13. Defendants all share the principal place of business at 4080 Jenkins Road; Chattanooga, TN 37421-1174.

## CLASS DESCRIPTIONS

14. Plaintiff brings this Fed. R. Civ. P. 23(b)(3) class action on behalf of the following similarly situated individuals:

> All current and former "over the road" truck drivers, classified as independent contractors, employed by Defendants in the State of Tennessee at any time during the applicable limitations period covered by this Class Action Complaint up to and including the date of final judgment in this matter.[1]

15. Plaintiff brings this FLSA collective action on behalf of the following similarly situated persons:

> All current and former "over the road" truck drivers, classified as independent contractors, employed by Defendants in the United States at any time during the applicable limitations period covered by this Collective Action Complaint (*i.e.* two years for FLSA violations and, three years for willful FLSA violations) up to and including the date of final judgment in this matter, and who is a Named Plaintiff or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b). (Collectively "the class").[2]

## FLSA COLLECTIVE ACTION ALLEGATIONS

16. Defendants own and operate a fleet of "over the road" long haul trucks, and provide trucking/distribution services to business entities throughout the United States.

17. Defendants employ truck drivers, such as Plaintiff and members of the putative class, and erroneously classify them as independent contractors.

18. Defendants have been the "employer" of Plaintiff and those similarly situated within the meaning of 29 U.S.C. § 203(d), during all times material to this Collective and Class Action Complaint.

---

[1] Plaintiff reserves the right to modify or amend the Class Description upon newly discovered information gathered through the discovery process.

[2] *Id.*

4

19. Defendants employed Plaintiff and those similarly situated and were responsible for setting and administering wage and compensation policies related to them during the relevant period of time.

20. The decisions regarding the compensation of Plaintiff and other members of the class, and other terms of employment, were made through a centralized management of Defendants' Headquarters located in Chattanooga, Tennessee, under the direction and control of their executives, officers and human resources personnel.

21. Defendants have had a centralized plan, policy and practice (scheme) of requiring Plaintiff and other similarly situated "over the road" truck driver employees to perform truck driving/distribution job duties without compensating them the applicable FLSA minimum wage.

22. Specifically, Defendants have suffered and permitted Plaintiff and members of the putative class to perform their truck driving job duties for Defendants within certain pay periods and then at times *refuse to compensate them all together*. In fact, Defendants issue pay stubs to Plaintiff and members of the putative class that charge them for "expenses" for the truck, insurance, and fuel. Defendants issue Plaintiff and other drivers pay stubs with a negative balance or with drastically reduced balances for pay periods.

23. At all times material to this action, Plaintiff and those similarly situated are, or have been, "employees" of Defendants as defined by Section 203(e)(1) of the FLSA, and worked for Defendants within the territory of the United States within three (3) years preceding the filing of this lawsuit.

24. At all times material to this action, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce as defined by Section 203(s)(1) of the FLSA, with annual revenue in excess of $500,000.00.

25. At all times material to this action, Defendants have been subject to the pay requirements of the FLSA because they are an enterprise in interstate commerce and its employees are engaged in interstate commerce.

26. The net effect of Defendants' aforementioned plan, policy and practice of requiring Plaintiff and those similarly situated to perform truck driving duties without compensating them the applicable FLSA minimum wage is that Defendants willfully failed to pay Plaintiff and other class members at least the FLSA minimum wage rates of pay, in order to save payroll costs and payroll taxes. As a consequence, Defendants have violated the FLSA and, thereby have enjoyed ill-gained profits at the expense of Plaintiff and others similarly situated.

27. Therefore, Plaintiff and others similarly situated are entitled and hereby seek to a recover back pay, liquidated damages, attorneys' fees, interest, and other costs, fees and expenses from Defendants for all such aforementioned time that is available under the FLSA as it relates to minimum wage.

28. Although at this stage Plaintiff is unable to state the exact amount owed to him and other members of the class, he believes sufficient information will become available to him through discovery. However, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of proof of overcoming such testimony shifts to the employer.

## CLASS ACTION ALLEGATIONS

29. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

30. Defendants own and operate a fleet of "over the road" long haul trucks, and provide trucking/distribution services to business entities throughout the United States.

31. Defendants employ truck drivers, such as Plaintiff and members of the putative class, and erroneously classify them as independent contractors.

32. Defendants promised Plaintiff and other putative class members that they would be compensated based on the miles they drove of the value of each truckload they delivered.

33. As explained above, Defendants failed to fully compensate Plaintiff and putative class members this mileage pay.

34. The precise number of collective class members can be easily ascertained by examining Defendants' payroll, scheduling, timekeeping, personnel, and other work-related records and documents.

35. Common questions law or fact common to the Rule 23 Class predominate over questions affecting only individual class members. These common questions of law or fact are:

   (a) Whether an employment contract existed between Defendants and Plaintiff and the putative class;

   (b) Whether the members of the Class are entitled to wages from Defendants under Tennessee's law of contracts;

   (c) Whether Defendants paid members of the class the wages they were contractually promised;

   (d) Whether the Defendants unlawfully breached their agreements with Plaintiff and members of the putative class;

   (e) Whether Defendants failed to keep true and accurate records for all truck loads delivered/routes driven by Plaintiff and the Class;

   (f) What were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding payment on contractually agreed wages;

(g) The nature and extent of the Rule 23 Class-wide injury and the appropriate measure of damages for the Class;

36. As demonstrated by the allegations above, Plaintiff's claims are typical of the Class' claims. These claims arose from the same employer at the same locations pursuant to the same practices and policies, and the claims are based on the same legal theories.

37. The persons in the Class identified above are so numerous that joinder of all members is impracticable.

38. The Class Members are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.

39. Defendants have acted or have refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

40. Plaintiff is an adequate class representative. Plaintiff was an "over the road" truck driver employee of Defendants who, like the Class, was not the paid the contractually agreed upon wages. Therefore, Plaintiff has an interest in seeking recovery for the same types of damages that members of the Class would seek.

41. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay all contractually agreed upon wages.

42. A class action is superior to other available methods for the fair and efficient adjudication of this litigation, particularly in the context of a breach of wage contract litigation like the present action, where an individual Plaintiff may lack the financial resources to vigorously

8

prosecute a lawsuit in federal court against corporate Defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions produce. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant savings of these costs. The members of the Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individuals in the Class are not *de minimis,* such damages are small compared to the expense and burden of individual prosecution of this litigation. Additionally, proceeding as a class action will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices. As a result, class treatment is a superior mechanism for resolving this dispute compared to the adjudication of individual litigation claims.

43. Plaintiff knows of no conflict of interest with the class of "over the road" truck driver employees who worked for Defendants.

44. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing those risks.

45. Plaintiff has hired the law firm of Jackson, Shields, Yeiser, Holt, Owen & Bryant to pursue his claims for unpaid wages. Jackson, Shields, Yeiser, Holt, Owen & Bryant focuses its practice on wage and hour claims under the FLSA and applicable state laws. It has represented other

employees asserting unpaid wage claims, and other compensable time, in numerous other cases. It has also represented numerous other employees and employers all over the United States in wage and hour claims in numerous other types of wage cases.

46. The class action mechanism is superior to the other available methods for a fair and efficient adjudication of the controversy. The expenses, costs, and burden of litigation suffered by individual other members of the class in a class action are relatively small in comparison to the expenses, costs, and burden of litigation of individual actions, making it virtually impossible for other members of the class to individually seek address for the wrongs done to them.

47. Plaintiff and other members of the class have suffered and will continue to suffer irreparable damage from the unlawful policies, practices, and procedures implemented by Defendants.

## FACTUAL BACKGROUND

48. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

49. Upon information and belief, Defendants are companies engaged in the business of hauling and delivery of freight by truck.

50. Named Plaintiff worked for Defendants as a commercial truck driver during the last three (3) years.

51. At all times relevant, Defendants erroneously designated Named Plaintiff, Collective Plaintiffs, and Class Members as independent contractors.

52. At all times relevant, Named Plaintiff, Collective Plaintiffs, and Class Members (hereinafter collectively "Lease to Own Drivers") leased trucks from U.S. Xpress Leasing, Inc. for the purpose of driving freight for Defendants.

53. Named Plaintiff is informed and believes, and thereon alleges, that U.S. Xpress, Inc. and

10
Case 1:20-cv-00174-CLC-CHS   Document 1   Filed 06/25/20   Page 10 of 19   PageID #: 10

U.S. Xpress Leasing Inc. are subsidiary corporations of U.S. Xpress Enterprises, Inc. Plaintiff is further informed and believes, and thereon alleges, that because of the interrelation of operations, common management, centralized control of labor relations, common ownership, common financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they may be treated as a single employer for purposes of this legal action and that each has liability for the act of the other as herein alleged.

54. Named Plaintiff is informed and believes, and thereon alleges, that Defendant U.S. Xpress Enterprises, Inc. is responsible for creating and promulgating the pay policies and other practices at issue in this action. Defendant U.S. Xpress Enterprises, Inc. controls such policies and practices by supervising and directing staff at Defendants U.S. Xpress, Inc. and U.S. Xpress, Leasing, Inc.

55. As a condition of their employment for Defendants, Defendants required Named Plaintiff and those similarly situated to enter into Equipment Lease Agreements ("Lease Agreements") with U.S. Xpress Leasing, Inc., whereby Named Plaintiff and those similarly situated were required to lease a vehicle from U.S. Xpress Leasing, Inc.

56. As a condition of entering into the Lease Agreements with U.S. Xpress Leasing Inc., U.S. Xpress Leasing Inc. required Plaintiffs to enter into Independent Contractor Agreements ("Contractor Agreements") with U.S. Xpress, Inc., whereby Named Plaintiff and those similarly situated subleased the tractors and their driving services to U.S. Xpress, Inc. via the Contractor Agreements.

57. The Lease Agreements between Named Plaintiff and those similarly situated and Defendant U.S. Xpress Leasing, Inc. require Named Plaintiff and those similarly situated to

drive only for Defendant U.S. Xpress, Inc., or default on their Lease Agreements, subjecting Plaintiffs to significant financial penalties.

58. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

### **Named Plaintiff and Other "Lease to Own Drivers" Were Misclassified as Independent Contractors**

59. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

60. Defendant U.S. Xpress, Inc. is a motor carrier as defined by the Motor Carrier Act.

61. Defendant U.S. Xpress, Inc's primary business is to provide transportation of cargo for hire.

62. Defendant U.S. Xpress, Inc. provided to Lease to Own Drivers Contractor Agreements, which purport to classify Lease to Own Drivers as independent contractors.

63. Defendant U.S. Xpress, Inc. provided said agreements to Lease to Own Drivers under the guise that Lease to Own Drivers would be participating in Defendants' Lease-Purchase Program.

64. In order to participate in the Lease-Purchase program, Defendant U.S. Xpress, Inc. required Lease to Own Drivers to execute a Lease Agreement with U.S. Xpress, Leasing, Inc.

65. As a condition of entering into the Lease Agreement, Lease to Own Drivers were required to maintain Contractor Agreements with and work for Defendant U.S. Xpress, Inc. to avoid defaulting on the Lease Agreement.

66. The Contractor Agreement and the Lease Agreement were presented as a single agreement requiring Lease to Own Drivers to execute both agreements at the same time.

67. For example, Named Plaintiff's Lease Agreement and Contractor Agreement are provided in the same "DocuSign Envelope ID." The documents were sent via a single link and presented as a single agreement.

68. Pursuant to the Lease Agreement, Lease to Own Drivers may only operate the leased vehicle "pursuant to the Contractor Agreement entered into with [U.S. Xpress, Inc.]."

69. Pursuant to the Lease Agreement, Lease to Own Drivers are in default of the Lease Agreement if "the Contractor Agreement between [the Lease Purchase Driver] and [U.S. Xpress, Inc.] is terminated by either party for any reason or otherwise expires, and [the Lease Purchase Driver] fails within two (2) days thereafter to enter into a new Contractor Agreement with [U.S. Xpress, Inc.] acceptable to [U.S. Xpress Leasing, Inc.] in the exercise of [U.S. Xpress Leasing, Inc.'s] sole discretion."

70. Pursuant to the Lease Agreement, U.S. Xpress, Leasing, Inc. "maintain[ed] all right[s], title, and interest in and to the Equipment for the entire term… [The Lease Purchase Driver] shall not assign, mortgage, encumber, or transfer this Agreement in whole or in part, or sublet the Equipment or any part thereof, or grant license or concession in connection therewith, without [U.S. Xpress Leasing, Inc.'s] prior written consent."

71. Pursuant to the Lease Agreement, the owner of the leased vehicle during the lease term was U.S. Xpress, Leasing, Inc., and the Lease Purchase Driver has no rights of an owner of the vehicle, including claiming depreciation of the vehicle for tax purposes.

72. Pursuant to the Contractor Agreement, U.S. Xpress, Inc. may terminate the Contractor Agreement at any time and for any reason by providing three days written notice.

73. Pursuant to the Contractor Agreement, the leased vehicle "shall be for [U.S. Xpress Inc.'s] exclusive possession, control, and use for the duration of [the Contractor Agreement]."

74. Pursuant to the Contractor Agreement, U.S. Xpress, Inc. was permitted to place and maintain on the leased equipment "any lettering, advertisement, slogans, or designs as [U.S.

Xpress, Inc.] may choose" and the Lease Purchase Driver's ability to place any signage on the vehicle was entirely in the discretion of U.S. Xpress, Inc.

75. Pursuant to the Contractor Agreement, U.S. Xpress, Inc. may take possession of any lading entrusted to the Lease Purchase Driver and may complete the delivery of the lading with the leased equipment without permission of the Lease Purchase Driver when, in U.S. Xpress Inc.'s sole judgment, any act or omission of the Lease Purchase Driver has subjected U.S. Xpress, Inc. to liability.

76. Pursuant to the Contractor Agreement, Lease to Own Drivers were required to use a DriverTech device at all times when operating the vehicle. The DriverTech Device permitted Defendant U.S. Xpress, Inc. to monitor the Lease Purchase Driver at all times, to communicate with the Lease Purchase Driver at all times, and to supervise the Lease Purchase Driver.

77. Defendants assigned Lease to Own Drivers a fleet manager, who acted as Lease to Own Drivers' supervisor throughout their employment with Defendants.

78. Lease to Own Drivers are/were not permitted to use the commercial vehicles leased to them for any carrier other than Defendant U.S Xpress, Inc.

79. Lease to Own Drivers are/were not permitted to accept jobs that were assigned to them by any carrier other than Defendant U.S. Xpress, Inc.

80. Lease to Own Drivers were required by Defendants to attend a multi-day new-hire orientation, the majority of which was attended by both Lease to Own Drivers, who are classified as independent contractors, and company drivers who Defendants properly classify as employees.

81. During orientation, Defendant U.S Xpress, Inc. informed Lease to Own Drivers of Defendants' Rules and Policies and informed Lease to Own Drivers that they are required to follow such rules at all times during their relationship with Defendants.

82. During orientation, Defendant U.S Xpress, Inc. informed Lease to Own Drivers that the best "strategy" for success is to accept all loads assigned by Defendants.

83. Defendants controlled the amount of compensation Lease to Own Drivers could make by being the sole source of loads that Lease to Own Drivers could take and by unilaterally setting the compensation to be provided to Lease to Own Drivers for completing each load.

84. Defendants controlled and directed Lease to Own Drivers in the performance of their work.

85. Lease to Own Drivers had no meaningful opportunity to increase their revenue by recruiting new customers, as they are/were not permitted to recruit new customers as a consequence of being permitted to accept only loads assigned to them by Defendants.

86. Lease to Own Drivers can/could do little to increase their profitability other than attempt to work more hours and increase fuel efficiency.

87. Lease to Own Drivers are/were economically dependent upon Defendants.

88. Lease to Own Drivers are/were required to report their status and availability to Defendants in real time at all times when they were over-the-road.

89. Lease to Own Drivers are/were required to request in advance any requests for home time or time off of work.

90. At all times, Defendants directed, provided, and supervised the work performed by Lease to Own Drivers on their behalf.

## COUNT I
## FAIR LABOR STANDARDS ACT VIOLATIONS – MINIMUM WAGE
**(On Behalf of the Class)**

91. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

92. Defendants' pay structure and wage deduction practices and policies regularly caused Named Plaintiff and Collective Plaintiffs' (collectively "FLSA Plaintiffs") wages to drop below the federal minimum wage of $7.25 per hour for all hours worked during a workweek.

93. For example, Named Plaintiff would complete long haul trips in which he should have been compensated around $810.00. Defendants then deducted from those earnings for the truck, insurance, and fuel which resulted in Plaintiff's net earnings of less than $500.00 – far below the FLSA minimum wage requirement.

94. Similar events occurred to Named Plaintiff and FLSA Plaintiffs on a regular basis.

95. Additionally, Defendants' pay structure and wage deduction practices failed to provide any payments free and clear, as payments made to FLSA Plaintiffs were conditioned on Defendants' ability to recapture such wages at a later date.

96. As a consequence of Defendants' unlawful scheme, FLSA Plaintiffs regularly received less than the federal minimum wage of $7.25 per hour for all hours worked during a workweek.

## COUNT II
## RULE 23 CLASS ACTION VIOLATIONS – BREACH OF CONTRACT
**(On Behalf of the Class)**

97. Plaintiff asserts class breach of contract claims because Defendants entered into valid and enforceable contracts with him and with each member of the proposed Rule 23 classes, pursuant to which Defendants were to pay a specified rate based on the value of each truck load delivered by Plaintiff and the Putative Class Members. Plaintiff further asserts that he and the Putative

Class Members duly performed as agreed, but that Defendants breached the contract by failing to compensate them these percentage-based wages.

98. In the alternative to the breach of contract class claims, Plaintiff asserts a quantum meruit/unjust enrichment claim that he and each member of the proposed Rule 23 class provided valuable services to Defendants, that Defendants accepted those services, and that Defendants had reasonable notice that class members expected to be compensated for their services furnished to Defendants. The reasonable value of the services provided and not paid for by Defendants with respect to the Rule 23 class is the difference between the difference between the minimum wage they are owed under the FLSA and the percentage-based wage they are entitled to for each truck load they delivered for Defendants.

## **PRAYER FOR RELIEF**

Whereas, Plaintiff, individually, and/or on behalf of himself and all other similarly situated members of the class, request this Court to grant the following relief against Defendants:

A. Designation of this cause as a collective action on behalf of the class and promptly issue notice pursuant to 29 U.S.C. § 216(b), apprising class members of the pendency of this action and permitting other members of the class to assert timely FLSA claims in

B. For an Order pursuant to Section 216(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff (and those who have joined in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff;

C. For certification of and notice to the FLSA Collective Action Classes and Rule 23 Classes, as further defined and determined by motions practice, and to properly inform them of their rights;

D. An award of compensation for unpaid minimum wages to Plaintiff and other members of the class at the applicable minimum wage rate as required by the FLSA;

E. An award of all contractually agreed to wages;

F. An award of liquidated damages to Plaintiff and other members of the class;

G. An award of prejudgment and post-judgment interest at the applicable legal rate to Plaintiff and other members of the class;

H. An award of costs, expenses, and disbursements relating to this action together with reasonable attorneys' fees and expert fees to Plaintiff and other members of the class;

I. A ruling that the three-year statutory period for willful violations under the FLSA shall apply in this action, and

J. Such other general and specific relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a **TRIAL BY JURY** on all issues so triable.

Dated: June 25, 2020.                    Respectfully Submitted,

*s/Gordon E. Jackson*
Gordon E. Jackson (TN BPR #8323)
J. Russ Bryant (TN BPR #33830)
Robert E. Turner, IV (TN BPR #35364)
Nathaniel A. Bishop (TN BPR #35944)
**JACKSON, SHIELDS, YEISER, HOLT, OWEN & BRYANT**
Attorneys at Law
262 German Oak Drive
Memphis, Tennessee 38018
Telephone: (901) 754-8001
Facsimile: (901) 754-8524
*gjackson@jsyc.com*
*rbryant@jsyc.com*
*rturner@jsyc.com*
*nbishop@jsyc.com*

***ATTORNEYS FOR PLAINTIFF AND FOR OTHERS SIMILARLY SITUATED***

19
Case 1:20-cv-00174-CLC-CHS   Document 1   Filed 06/25/20   Page 19 of 19   PageID #: 19