# SETTLEMENT AND RELEASE AGREEMENT

THIS AGREEMENT is made and entered into by and among Claimant, Estele Ray Neely, and Respondents, U.S. Xpress Enterprises, Inc., U.S. Xpress, Inc., and U.S. Xpress Leasing, Inc.

## Recitals

A.  On June 25, 2020, Claimant filed his Original Collective and Class Action Complaint (Complaint) in the United States District Court for the Eastern District of Tennessee against Respondents. On July 29, 2020, the parties notified the Court that the claims asserted in the Complaint were subject to an arbitration agreement and requested the Court stay its proceedings pending the outcome of Claimant's individual arbitration. On July 31, 2020, Claimant filed a demand for arbitration (Demand) with the American Arbitration Association (AAA) against Respondents. On December 11, 2020, Claimant served his Amended Demand for Arbitration (Amended Demand) against Respondents.

B.  In the Complaint, Demand, and Amended Demand, Claimant alleged that Respondents violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the FLSA) by failing to properly pay Claimant the minimum wage. Claimant also alleged Respondents violated Tennessee common law.

C.  Respondents have denied and continue to deny Claimant's allegations in the Complaint, Demand, and Amended Demand. Respondents state that Claimant was an independent contractor and was never employed by Respondents. Respondents further state that, even if Claimant was Respondents' employee, Claimant has been paid all amounts owed under the FLSA. Additionally, Respondents state Claimant released his common law claims by written agreement executed on or about June 26, 2020.

D.  After further investigation, Claimant has not identified any FLSA minimum wage

violations during the time he contracted with U.S. Xpress, Inc., and Claimant received over $13,000 in net deposits to his bank account while under contract with U.S. Xpress, Inc. Additionally, Claimant received over $4,000 in cash advances during the same period. Accordingly, even if Claimant had worked 24 hours a day, 7 days a week, for 12 weeks, such that he should have been paid $14,616 in minimum wages, he was compensated in excess of the minimum wage on average.

  E. Pursuant to the terms and conditions of this Agreement, which all parties acknowledge and represent to be fair, reasonable and adequate and in their mutual best interests, Claimant and Respondents desire to compromise and settle the claims contained in the Complaint, Demand, and Amended Demand, and to release all rights and claims arising out of or in any way connected with the Complaint, Demand, and Amended Demand, Claimant's relationship with Respondents, and any and all transactions, occurrences, or matters occurring between Claimant and Respondents prior to the date of this Agreement.

## Agreement

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants contained in this Agreement, and upon the terms and conditions set forth below, Claimant and Respondents agree as follows:

  **1.** **Settlement Amount.** Respondents will pay to Claimant the gross sum of $1,000 (the Settlement Amount). The Settlement Amount will be paid in two (2) checks to Estele Ray Neely and shall be delivered to Jackson, Shields, Yeiser, Holt, Owen & Bryant, 262 German Oak Drive, Memphis, TN 38018. One check shall be made payable to Estele Ray Neely for the amount of Two-Hundred Dollars and Zero Cents ($200.00) No deductions or withholdings will be made from this payment, and the amount will be reported on a Form 1099 issued to Estele Ray Neely.

2
Case 1:20-cv-00174-CLC-CHS   Document 16-1   Filed 04/28/21   Page 2 of 9   PageID #: 54

The second check shall be made payable to Jackson, Shields, Yeiser, Holt, Owen & Bryant for the amount of $800.00. The checks will be due and payable within 14 days after the later of (i) the date the U.S. District Court for the Eastern District of Tennessee approves the parties' settlement or (ii) the Effective Date of this Agreement and Respondents' receipt of a completed W-9 from Claimant. Claimant acknowledges and agrees that he is not entitled to any additional payments from Respondents for any of the claims set forth in the Complaint, Demand, and Amended Demand, and that the Settlement Amount is made in full satisfaction of all of Claimant's claims for damages, including costs and attorney fees, that Claimant has or could have asserted against the Respondents as of the Effective Date of this Agreement.

2. **Tax Consequences of Settlement**. The parties understand and acknowledge that allocation of the settlement as set forth in Paragraph 1 of this Agreement was agreed upon following arms-length negotiation and was based upon the parties' analysis of the claims, defenses and potential remedies involved. Claimant agrees that Respondents shall not be liable for payment of any tax assessed against Claimant in connection with this Agreement. Rather, Claimant agrees that any such tax shall be his sole responsibility. Claimant agrees that in the event any tax penalty or tax liability of any kind is assessed against or incurred by Respondents because of the payment described in Paragraph 1, he will fully and completely indemnify and hold harmless Respondents for that portion of said tax penalty or tax liability that was his responsibility. Nothing contained herein shall be construed or relied upon as any advice or opinion by or on behalf of Respondents regarding the tax treatment of the payments referenced in Paragraph 1, and Claimant hereby expressly acknowledges that he will rely solely on his own accountants, attorneys or advisors for such advice or opinion.

3. **General Release by Claimant.** For and in consideration of Respondents' payment

3
Case 1:20-cv-00174-CLC-CHS   Document 16-1   Filed 04/28/21   Page 3 of 9   PageID #: 55

of the Settlement Amount, Claimant releases and discharges Respondents, U.S. Xpress Enterprises, Inc., U.S. Xpress, Inc. and U.S. Xpress Leasing, Inc., their parent companies, subsidiaries, affiliates, insurers and divisions, as well as each of their respective officers, directors, employees, shareholders, members, and agents (collectively, Releasees), from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including, but not limited to, attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity, arising out of or in any way related to Claimant's relationship or dealings with Respondents, which Claimant now has, owns or holds, or claims to have, own or hold, or which he at any time heretofore had, owned or held, or claimed to have, own or hold against them through the Effective Date. Without limiting the foregoing general release, Claimant understands that this release applies to, but is not limited to, the following:

a. All claims arising from any alleged violation by the Releasees of any federal, state, or local statutes, or ordinances, including, but not limited to; (i) the Fair Labor Standards Act (the FLSA); (ii) Title VII of the Civil Rights Act of 1964, as amended; (iii) the Age Discrimination in Employment Act; (iv) the Older Workers Benefit Protection Act; (v) the Family and Medical Leave Act (the FMLA); (vi) the Equal Pay Act; (vii) the Americans with Disabilities Act; (viii) 42 U.S.C. § 1981, as amended; (ix) the Employee Retirement Income Security Act; (x) the Consolidated Omnibus Budget Reconciliation Act; (xi) the Rehabilitation Act of 1973; (xii) the Civil Rights Act of 1991; (xiii) the Pregnancy Discrimination Act; and (xiv) any other employment discrimination laws;

b. All claims based on state wage and hour laws or statutes;

c. All claims based on constitutional, statutory, common law, or regulatory grounds, and all claims on theories of workers' compensation retaliation, breach of contract or implied covenant, deprivation of equity interest, shareholder rights, conversion, defamation, retaliation, wrongful or constructive discharge, fraud, misrepresentation, promissory estoppels, intentional or negligent infliction of emotional distress;

d. All claims arising from alleged violations of Tennessee and other states common law, including, but not limited to, claims for breach of duty of good faith and fair dealing; breach of contract; conversion, unjust enrichment;

                quantum meruit; ill-gotten gains; detrimental reliance; and

      e.    All claims for any relief, no matter how denominated, including, but not limited to, back pay, front pay, vacation pay, holiday pay, personal time bonuses, compensatory damages, punitive damages, damages for pain and suffering, and attorney fees.

The parties agree that this is a general release to be broadly construed as a release of all claims; <u>provided that</u>, notwithstanding the foregoing, this paragraph expressly does not include a release of any claims that cannot be released hereunder by law.

**4.** **Non-Interference**. Nothing in this Agreement shall interfere with Claimant's right to file a charge or complaint, or to cooperate or participate in an investigation or proceeding conducted by the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, OSHA, or other federal, state or local agency. Claimant agrees, however, not to file any lawsuit based on any claims contained in any such charge or complaint. Claimant further understands that he will not be entitled to recover any monetary damages against the Releasees in connection with any such charge or complaint unless paid directly by or on behalf of a government agency. Claimant agrees that the consideration provided in this Agreement shall be his sole relief for such claims.

**5.** **Dismissal of Demand.** Contemporaneous with the execution of this Agreement, the parties also agree to file a Motion for Approval of Settlement and Stipulated Dismissal in the U.S. District Court for the Eastern District of Tennessee.

**6.** **Non-Admission.** Claimant acknowledges that this Agreement does not constitute an admission by Respondents that any action taken by them was wrongful, unlawful, or in violation of any federal, state, local, or common law, or statutory or constitutional rights of Claimant. Claimant also understands that this Agreement is entered into solely for the purpose of settlement and compromise and in an effort to fully resolve all matters pertaining the Complaint, Demand,

and Amended Demand, and any and all transactions, occurrences, matters occurring between or among the parties prior to the date of this Agreement.

7. **Confidentiality and Non-Disparagement.** Claimant (on behalf of himself and his immediate family) covenants and agrees that he will keep confidential and will not repeat or disclose any of the terms or conditions of this Agreement, or the negotiations that resulted in this Agreement, or any of the facts relating to the claims covered by this Agreement, except to Claimant's legal counsel, accountant, and tax authorities, and as otherwise may be required by law or legal process (including to secure Court approval of the settlement) or for the limited purpose of enforcement of this Agreement. In response to inquiries regarding the Complaint, Demand, and Amended Demand, Claimant shall respond only that the matter has been resolved. Claimant agrees that he will refrain from making any disparaging comments regarding Respondents, or their respective officers, directors, management, employees, and agents.

8. **No Reinstatement**. Claimant covenants and agrees that he will not seek to obtain reinstatement with, nor shall Claimant be entitled to any employment by, U.S. Xpress, Inc. or its affiliates at any time after the execution of this Agreement.

9. **Agreement as Evidence.** This Agreement may be used as evidence in a subsequent proceeding in which either of the parties allege a breach of this Agreement.

10. **Representations and Warranties.** Claimant represents and warrants: (a) that he has read this Agreement and fully understands it; (b) that he has been advised by Respondents to seek his own legal counsel prior to executing this Agreement; (c) that he is fully aware of his rights; (d) that he has had the opportunity for the advice and assistance of an attorney throughout the negotiation of this Agreement; (e) that he has sought and received the advice of an attorney; (f) that the Settlement Amount represents amounts to which he would not otherwise be entitled but

for his execution of this Agreement; and (g) he is entering into this Agreement freely, voluntarily, and without duress, undue influence, coercion, or promise of benefit, except as expressly set forth in this Agreement.

11. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, representatives, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, related companies, successors, and assigns, although not specifically named in this Agreement.

12. **Severability.** In the event any provision of this Agreement is deemed to be invalid or unenforceable by any court or administrative agency of competent jurisdiction, this Agreement shall be deemed to be restricted in scope or otherwise modified to the extent necessary to render that provision valid and enforceable. In the event that any provision of this Agreement cannot be modified or restricted to make it valid and enforceable, then that provision shall be deemed excised from this Agreement, and this Agreement shall be construed and enforced as if the provision had originally been incorporated in the Agreement as so restricted or modified or as if provision had not originally been contained in the Agreement, as the case may be.

13. **Entire Agreement.** This Agreement constitutes and contains the entire agreement among the parties concerning the transaction contemplated in this Agreement, supersedes all prior negotiations, proposed agreements, and understandings concerning the matters contained in this Agreement, if any, between or among the parties, and shall not be altered or otherwise amended except pursuant to an instrument in writing signed by all parties to the Agreement.

14. **No Claim for Costs and Attorneys Fees**. Claimant agrees that neither this Agreement nor any action taken pursuant to this Agreement shall be interpreted or construed to render Claimant a prevailing party for any reason, including, but not limited to, an award of

attorney fees or costs, and no monies in addition to those referred to in Paragraph 1 of this Agreement shall be payable to Claimant or to his past, present or future attorneys for attorney fees or costs or for any other reason. Each party shall pay his or its own costs and attorney fees.

15. **Governing Law.** The laws of the State of Tennessee shall govern this Agreement in all of its aspects and Tennessee law shall apply to any dispute related to this Agreement.

16. **Construction of Agreement.** The parties hereby confirm and agree that this Agreement is the result of negotiation and compromise, that in interpreting this Agreement neither party shall be considered to be the drafter of the document, and that the language should not be strictly construed against either party. Instead, the language of the Agreement shall be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

17. **Time for Consideration and Revocation.** Claimant acknowledges and agrees that he has had at least 21 days to consider this Agreement. Claimant shall have seven days following his execution of this Agreement in which he may revoke this Agreement. This Agreement shall not be enforceable until this revocation period has expired without Claimant exercising his right of revocation. Notice of revocation of this Agreement must be in writing and delivered to James A. Eckhart, Scopelitis, Garvin, Light & Hanson, 10 West Market Street, Suite 1400. Indianapolis, IN 46204, no later than 10:00 a.m. Eastern Time on the next business day following the expiration of the seven-day period.

18. **Failure to Comply.** Should either party breach or otherwise fail to comply with the terms and provisions of this Agreement, the prevailing party in any such dispute shall be entitled to recover, in addition to any and all other appropriate relief, all costs arising from the breach or failure, including but not limited to, attorney fees.

19. **Execution in Counterparts.** The parties may execute this Agreement in

counterparts, and execution of counterparts shall have the same force and effect as if all parties had signed the same instrument.

**20.** **Effective Date.** This Agreement shall become effective after expiration of the revocation period without Claimant exercising his right of revocation as provided for in Paragraph 17 of this Agreement.

The parties have signed this Agreement on the dates indicated below. The date of this Agreement shall be the date of the latest signature.

| **CLAIMANT** | **RESPONDENTS** |
|---|---|
| *(signature)* | U.S. XPRESS ENTERPRISES, INC. |
| Estele Ray Neely | By: *(signature)* |
| Dated: 04-22-2021 | Nathan Harwell, EVP, Chief Legal Officer & Corporate Secretary |
| | Printed Name and Title |
| | Dated: 04-28-2021 |
| | U.S. XPRESS, INC. |
| | By: *(signature)* |
| | Nathan Harwell, Secretary |
| | Printed Name and Title |
| | Dated: 04-28-2021 |
| | U.S. XPRESS LEASING, INC. |
| | By: *(signature)* |
| | Nathan Harwell, Secretary |
| | Printed Name and Title |
| | Dated: 04-28-2021 |

4833-0738-0703, v. 7